HERMAN FRANCIS WHITLEY, LOIS KERN, ROGER LEON GRAVES, AND WILLIAM D. EMBRY, BAIL BONDSMAN, AS ATTORNEY IN FACT FOR COSMOPOLITAN INSURANCE COMPANY, APPELLANTS, *v.* STATE OF NEVADA, RESPONDENT.

No. 4631

October 22, 1963

386 P.2d 93

*Foley Brothers,* of Las Vegas, for Appellants.

*Harvey Dickerson,* Attorney General, and *Roscoe H. Wilkes,* District Attorney, Lincoln County, for Respondent.

## O P I N I O N

By the Court, McNAMEE, J.:

On October 12, 1960, after dark, or on October 13th before daybreak, three business houses in Caliente, Lincoln County, one of which was the Shamrock Club, were burglarized. Upon discovery of the burglaries an investigation was conducted by county officials. They ascertained the following facts:

Three strangers in a 1955 model Dodge sedan, two-toned green in color bearing a New Mexico license plate, had been seen in Lincoln County on the afternoon and evening before the burglaries. They had attempted to buy a gun at a service station. They were white, two were younger men 20 to 25 years of age, one of whom was dark-complexioned and the other of small stature. The third man was older. Two burglaries recently had taken place in McGill, Nevada. The articles stolen in all five burglaries were ascertained including cash in the sum of approximately $12,000. These articles consisted in part of a .22 caliber Hi-Standard pistol, a cap and ball pistol (a relic), a hospital corpsman's ring of cheap silver, one imitation ruby ring in a Tiffany setting,

one gold ring with Fire Department badge on it with initials inside "D.R.," one ring with a Roman's head engraved in a setting, an imitation diamond ring with large stone in center with two small stones on each side, a Rotary past-president ring, an Elgin wrist watch, shoes with rubber soles having a cross-ribbed design, vinyl jackets, one of which was brown or orange in color and one steel gray.

The results of this investigation were transmitted to the Las Vegas Police Department. Las Vegas police officers Reed and Stopka, after receipt of this information and while patrolling in Las Vegas on October 14, 1960, noticed a two-toned green 1955 Dodge sedan with New Mexico plates parked in a parking lot of the Wittwer Motel on North Main Street in Las Vegas. Two young men, later ascertained to be Denny and Graves, were observed to be standing on the motel balcony at a position above the Dodge automobile near the door of Room 44. Shortly afterwards these two men were observed driving the Dodge sedan out of the Wittwer Motel parking lot proceeding northerly on North Main Street. The officers caused the vehicle to stop.[1] Denny and Graves were ordered to step out of the vehicle. As they did so a black sock on the floor of the automobile filled with coins was observed by the officers. When the men opened their wallets to show their identifications each wallet was seen to contain much currency in large denominations. At this time Officers Handlon and Compton arrived. Neither suspect would give any information regarding the sock full of coins. They were placed under arrest, a search was made of the trunk of the automobile, wherein between the folds of a blanket was found a .22 caliber Hi-Standard pistol. The black sock contained coins with wrappers, one wrapper marked "Red Wing Specialty Company, Caliente, Nevada." Handlon, who had been informed of the circumstances of the burglaries, proceeded to the Wittwer Motel. He determined that the green Dodge was not the automobile of any tenant there registered and that Denny and Graves were not

---

[1] There is a dispute whether the suspects were violating a traffic law at the time. We consider this has no significance.

tenants of the motel. Handlon then returned to the police station and ascertained that $858 had been taken from Denny and $528 from Graves and that Denny and Graves were staying at the Normandie Motel. A key to a room in said motel was found on one of the prisoners. Handlon, in the company of Officers Compton and DeWeert, then went to the Normandie Motel on Las Vegas Boulevard South. They learned that Room 3 was occupied by Mr. Ted Baird and two guests, whose registration card revealed that their automobile was a Dodge sedan having a New Mexico license plate bearing the number of the car then being held at the police station. The officers proceeded to Room 3, knocked on the door several times, and when no one answered the key was placed in the lock and the door opened. They found D. W. Black lying on the bed. After receiving Black's consent a search was made of the room. In this connection, the consent was given while each of the officers was bearing a gun more or less exposed.[2] The search revealed the following objects: A ring fitting the description of one of the rings that had been stolen, a pair of boots and a pair of oxfords, both of which had rubber soles with a "cross-ribbed" design, two antennas, two microphones, two new vinyl jackets, a sock containing 99 dimes and a sock containing 101 nickels, a gun holster, and some white cotton gloves. Black was placed under arrest. Handlon returned to the police station where he received a phone call from the Wittwer Motel that Denny and Graves, when at the motel, had been visiting Room 44. Another phone call from the Normandie Motel advised Handlon that a call had come from Room 44 of the Wittwer Motel to Room 3 of the Normandie Motel. Thereupon Handlon with Compton and DeWeert proceeded to the Wittwer Motel where they knocked on the door of Room 44. They were permitted to enter the room by the wife of Denny. They entered the room with their sidearms drawn. Herman Whitley was lying on the bed. Permission was given by Whitley to search the room. Through the open door of the closet two new vinyl jackets could be seen, one steel gray and the other burnt

---

[2]Black testified at his trial that he was afraid to refuse consent.

orange or mustard in color. On a chest of drawers was a piece of paper on which was written "Normandie Motel, Room 3, South Las Vegas Street." Also in plain view was a purchaser's receipt of a cashier's check in the sum of $1,000. A cap and ball pistol was found in a suitcase. A black sock identical to the one found in the Dodge containing $124.28 in miscellaneous coins also was found. Whitley and Mrs. Denny were arrested and taken to the police station where Mrs. Denny was later released. A second call from the Wittwer Motel was received advising that there was a lady in Room 44. Officers proceeded there where they were admitted by Lois Kern (Whitley).[3] Mrs. Kern was arrested.

After all of said persons had been arrested, Lincoln County authorities were notified and they proceeded at once to Las Vegas. A further search was conducted in Room 3 of the Normandie Motel which revealed a Roi-Tan cigar box lid and a new pair of men's argyle socks with a Gottfredson's Department Store[4] price tag affixed to same. They then further searched Room 44 of the Wittwer Motel where further items of evidence were picked up. The car being used by Whitley and Lois Kern, a tan Oldsmobile, was also searched and it revealed a sledge hammer, a $3/8$-inch punch, two battery-powered radio transceivers, a pair of leather boots with ribbed soles, a pair of tan leather gloves, and a Roi-Tan cigar box without a lid.

No warrant of arrest had been issued prior to the arrest of any of the five persons. No search warrant had been issued prior to the seizure of the articles later offered in evidence during the trials.

Two trials were required because on June 19, 1961, at the time of the commencement of the trial of Whitley, Kern, and Black, defendants Denny and Graves had absconded while at liberty under bail. After their apprehension and on August 20, 1962, their trial took place. All defendants in the two trials were found guilty. The defendants were tried for the burglary of the Shamrock Club only.

---

[3] She married defendant Whitley after her arrest.
[4] One of the places burglarized in Caliente.

Black did not appeal from his conviction. Denny, after appealing, dismissed his appeal. Thus we are concerned only with the appeal taken by Whitley and his wife, Lois Kern, from the judgments against them and from the order denying their motion for new trial, the appeal of Graves from the judgment, and the appeal of Embry, the bail bondsman.

Eight errors are assigned relating to the appeals of Whitley, Kern, and Graves. They all pertain to their arrests and the subsequent searches and seizures of the evidence without warrants either for arrest or for search.

On the first day of the Whitley-Kern-Black trial, the case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, was decided. Counsel and the trial judge later learned of this decision. If the evidence admitted at this trial was procured by means of an illegal search and seizure the convictions of Whitley and Kern must be reversed.

The information given by the Lincoln County authorities to the Las Vegas Police Department, aside from a description of the stolen articles, related only to three persons similar in appearance to Denny, Graves, and Black, and to the Dodge automobile in which they had been riding in Lincoln County. The arrest of Whitley and later of Kern without any warrant occurred when the arresting officers had no information that either of these appellants had been involved in the burglary of the Shamrock Club.

NRS 171.235 provides in part that a peace officer may without a warrant arrest a person "when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

The felony with which these defendants were charged had in fact been committed. At the time of their arrest, however, the only cause for believing that they might have been parties to the commission of the felony was the belief of the arresting officers that these parties were acquainted with Denny, Graves, and Black. Mrs. Denny likewise was arrested without a warrant, but was released when it was ascertained that she had just arrived in Las Vegas from New Mexico.

When a person is arrested without a warrant for his arrest upon the mere belief of the arresting officers that he is acquainted with the person or persons suspected of committing a felony which actually has been committed, a reasonable cause as required by NRS 171.235 for believing that the person arrested participated in the commission of the felony is not established. People v. Privett, 55 Cal.2d 698, 12 Cal.Rptr. 874, 361 P.2d 602; People v. Kitchens, 46 Cal.2d 260, 294 P.2d 17. The arrests therefore of Whitley and Kern were illegal and the evidence obtained thereafter during a search without a warrant, not being incident to a legal arrest, is inadmissible. People v. Michelson, 30 Cal.Rptr. 18, 380 P.2d 658.[5] Evidence to the effect that Black and Whitley gave the officers permission to search the rooms in which they were found, even if given voluntarily, would not justify the subsequent searches of the rooms and of the Oldsmobile automobile by the Lincoln County authorities or authorize the reception in evidence of articles seized during such subsequent searches. People v. Wilson, 145 Cal.App.2d 1, 301 P.2d 974. Under the decision of Mapp, a conviction based thereon must be reversed.

In our opinion, the arrests of Graves and Denny without a warrant were proper, because a felony had in fact been committed, a description of the suspects had been given to the arresting officers by persons in whom they had confidence, and the officers had reason to believe that Graves and Denny from the appearance of each were two of the three persons who had been described to them as being involved in the burglary. These arrests being legal without any warrant of arrest, the officers were empowered to search the immediate premises, in this instance the Dodge automobile. Wyatt v. State, 77 Nev. 490, 367 P.2d 104.

[5]The cases of Terrano v. State, 59 Nev. 247, 91 P.2d 67; State v. Chin Gim, 47 Nev. 431, 224 P. 798; and Ex parte Rankin, 45 Nev. 173, 199 P. 474, in so far as they are inconsistent with this conclusion, are expressly overruled.

The only exhibits received in evidence during the trial of Graves were the articles taken from the Dodge automobile at the time of Graves' arrest, and these articles were part of the property taken during the burglary of the Shamrock Club. These articles being material to the charge for which Graves was being tried and not having been seized illegally were properly received as evidence. People v. Lopez, 32 Cal.Rptr. 424, 384 P.2d 16; People v. Hammond, 54 Cal.2d 846, 9 Cal.Rptr. 233, 357 P.2d 289.

The appeal of Embry is from the order of January 4, 1962, which forfeited the bail bonds of Graves and Denny and from the order of March 28, 1962, denying the motion to set aside these bail forfeitures. No error has been assigned with respect to this appeal. Without deciding whether such orders are appealable and, if so, whether the lower court erred in making either order, we have concluded that the appeal of Embry must be dismissed.

NRS 178.155 provides that if at any time within 90 days after a forfeiture of bail has taken place the "defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just." Embry construes this section as empowering him to appeal the lower court's refusal to set aside a forfeiture. The necessity for empowering a bail to appear "and satisfactorily excuse his neglect" is obvious. In perhaps most cases the defendant is not available and the bail should be afforded the opportunity of presenting an excuse for the nonappearance of the defendant. Embry however was a stranger to the criminal proceedings below except as a surety on the bail bonds. He was not a party at either trial.

NRS 177.060 provides for an appeal only by an aggrieved *party,* "whether that party be the state or the defendant." The parties aggrieved by these rulings of the lower court pertaining to bail were Graves and

Denny, because of their eventual liability to Embry resulting from forfeiture in the event the district attorney pursuant to NRS 178.160 successfully proceeds by action against Embry upon the bonds. In such a civil action Embry would be a party entitled to present any defense he might have. If unsuccessful in the trial court, he then would be entitled to appeal from the final judgment as a "party aggrieved" pursuant to NRCP 72(a). In the present proceedings Embry is not an aggrieved party within the meaning of NRS 177.060.

The judgments against appellants Whitley and Kern and the order denying their motion for new trial are reversed, and their cause is remanded for a new trial. Judgment against appellant Graves is affirmed. Appeal of appellant Embry is dismissed.

BADT, C. J., and THOMPSON, J., concur.